IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

DOUGIE LESTER,
individually and on behalf of all others
similarly situated,

     Plaintiff,

  v.

PAY CAR MINING, INC.,
BLUESTONE INDUSTRIES, INC.,
BLUESTONE COAL CORP.,
KEYSTONE SERVICE INDUSTRIES, INC.
and MECHEL BLUESTONE, INC.,

     Defendants.

Civ. Action No.   5:17-cv-00740
Honorable Judge Irene C. Berger

## COMPLAINT

The Plaintiff, Dougie Lester, individually and on behalf of all others similarly situated, by and through the undersigned counsel, brings this action arising out of a violation of the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. Section 2101 et seq.

Defendant Pay Car Mining, Inc., on its own and in concert with its affiliates Mechel Bluestone, Inc., Bluestone Industries, Inc., Bluestone Coal Corp., and Keystone Service Industries, Inc., failed to provide their full-time employees with the sixty-days notice required under the WARN Act prior to laying off more than fifty of those workers beginning in October 2012 at the large coal-mining and preparation facility known as the Pay Car Mine located between the towns of Kimball and Keystone in McDowell County, West Virginia.

Plaintiff brings this action, consistent with Federal Rule of Civil Procedure 23, on his own behalf and on behalf of the Defendants' other similarly-situated employees, for statutory damages, interest, costs, and fees, pursuant to the WARN Act.

## Parties

1.	Plaintiff, Mr. Dougie Lester, was a full-time employee of Mechel Bluestone, Inc. and Pay Car Mining, Inc. for over two years. Mr. Lester worked for those Defendants at the coal-mining and preparation site known as the Pay Car Mine located between the towns of Kimball and Keystone in McDowell County, West Virginia, at the time that he was laid off without prior written notice on or about October 20, 2012. At all times relevant herein, Mr. Lester has resided in Hanover, Wyoming County, West Virginia.

2.	Pay Car Mining, Inc. (hereinafter "Pay Car") is a West Virginia Corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

3.	Bluestone Industries, Inc. (hereinafter "Bluestone Industries") is a West Virginia Corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

4.	Bluestone Coal Corporation (hereinafter "Bluestone Coal Corp.") is a West Virginia Corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

5.	Keystone Service Industries, Inc. (hereinafter "KSI") is a West Virginia corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

6.     Mechel Bluestone, Inc., (hereinafter "Mechel Bluestone") is a Delaware corporation, with its mailing address at P.O. Box 2178, Beaver, Raleigh County, West Virginia 25813, and its principal place of business at Glade Springs, 216 Lake Drive, Daniels, Raleigh County, West Virginia 25832.

## Jurisdiction and Venue

7.     Jurisdiction over this claim is founded on the existence of a federal question.  This action arises under the WARN Act, 29 U.S.C. Section 2101, et seq., and jurisdiction is conferred pursuant to 29 U.S.C. Section 2104.

8.     Venue is proper in this District pursuant to the WARN Act, 29 U.S.C. Section 2104(a)(5), because the WARN Act violation giving rise to this Complaint is alleged to have occurred in this District and in this Beckley Division, and because the Defendant-employers transact business in said District and Division.

## Facts

9.     Prior to October 20, 2012, Pay Car Mining, both on its own and jointly with Mechel Bluestone, KSI, Bluestone Coal Corp. and Bluestone Industries, employed 100 or more employees, including Plaintiff, excluding part-time employees, at or in connection with the Pay Car Mine.

10.    During the year 2012, the Defendants owned, operated, and controlled several mining facilities that produced and prepared coal in Wyoming and McDowell Counties, West Virginia, including the integrated operations encompassed by the Pay Car Mine.

11.    Mechel Bluestone owned, controlled, operated, and maintained the Pay Car Mine, in coordination with Bluestone Industries, Bluestone Coal Corp., and Keystone Service Industries., Inc., through the subsidiary Pay Car Mining at all relevant times.

12. The Pay Car Mine is located near the southern terminus of Burke Mountain, with a mine portal, offices, refuse pond facility, and preparation plant accessible from Bottom Creek Road (County Highway 52/08) between the towns of Kimball and Keystone in McDowell County, West Virginia.

13. At all relevant times, the coal from the underground operations at the Pay Car Mine was processed, beneficiated, and/or prepared for sale at a preparation plant that was controlled and operated by KSI, Bluestone Industries, Bluestone Coal Corp., and/or Mechel Bluestone, and that was located on the surface near the Pay Car Mine.

14. The preparation plant was directly linked to the portal of the Pay Car Mine by a haul road that was permitted by the West Virginia Department of Environmental Protection in the name of Bluestone Coal Corporation, and that was controlled by Bluestone Coal Corporation in concert with other Defendants.

15. The Pay Car Mine constituted a "single site of employment" for purposes of the WARN Act.

16. All of the employees at the Pay Car Mine were engaged in a common operational purpose, under common management, used common equipment, and were under the Defendants' *de facto* and *de jure* management, maintenance, and control. Representatives of each of the three Defendants routinely ordered, directed, and/or controlled the Plaintiff and other workers throughout the Pay Car Mine on a daily basis.

17. At all times relevant to this action, the Pay Car Mine was under the Defendants' *de jure* and *de facto* ownership and control as an employer and a mine operator.

18. Upon information and belief, employees of Defendant Bluestone Industries directed the workforce at the Pay Car Mine and participated in implementing the layoff that forms the basis of the instant action.

19. Up until on or about October 20, 2012, there were three shifts of workers at the Pay Car Mine—day or first shift; evening or second shift; and hootowl, midnight, or third shift.

20. On or about October 20, 2012, at or about the beginning of the second shift, the Defendants ordered and carried out a mass layoff at the Pay Car Mine.

21. Neither the Plaintiff nor the others of Defendants' employees at the Pay Car Mine received written notice that the employees would be laid off prior to the occurrence of that layoff in 2012.

### Count I - Violation of the WARN Act
### 29 U.S.C. 2104

22. Plaintiff repeats and re-alleges paragraphs 1 through 16 as though fully set forth herein.

23. Defendant Pay Car Mining individually, and all Defendants jointly, constitute employers as defined by 29 U.S.C. § 2101(a)(1), for purposes of the WARN Act, because Pay Car Mining individually and all Defendants jointly are business enterprises that either employed one hundred (100) employees, excluding part-time employees, or employed one hundred or more employees who in the aggregate worked at least 4,000 hours per week (exclusive of hours of overtime).

24. The Plaintiff is an affected employee as defined by 29 U.S.C. § 2101(a)(5), for purposes of the WARN Act, because he is an employee of one or more of the Defendants who

experienced an employment loss as a consequence of a plant closing or mass layoffs ordered by Defendants as stated in 2012.

25. As employers under the WARN Act, Defendants had an obligation pursuant to 29 U.S.C. § 2102 to provide written notice to the affected employees or to a representative of the affected employees at the Pay Car Mine at least sixty (60) days prior to the planned plant closing or mass layoffs.

26. Plaintiff was laid off by Pay Car Mining, and by Defendants jointly, on or about October 20, 2012, and within a 90-day period encompassing other layoffs at the Pay Car Mine by the Defendants.

27. The October 20, 2012 layoff, either on its own or taken together with layoffs within said 90-day period, constitutes a plant closing and/or mass layoff pursuant to 29 U.S.C. 2104(d).

28. Plaintiff and Defendants' other aggrieved and affected employees experienced an employment loss because they were separated from work, without cause, for a period exceeding 6 months, as a result of the aforementioned layoff, which constituted a plant closing at the Pay Car Mine.

29. Alternatively, the Plaintiff and Defendants' other aggrieved and affected employees at the Pay Car Mine experienced an employment loss as a result of the aforementioned layoff, and as a consequence of which the Plaintiff and Defendants' other affected employees were laid off for a period exceeding 6 months, and which constituted a mass layoff.

30.     Defendants failed to provide a written notice to Plaintiff, or to Defendants' other affected employees at the Pay Car Mine, prior to closing the plant or carrying out the mass layoff beginning on or about October 20, 2012.

31.     As a result of the plant closing or mass layoff carried out on or about October 20, 2012, among other dates known and unknown within a 90-day period encompassing October 20, 2012, at least approximately 80-90 of Defendants' employees, excluding part-time employees, and including Plaintiff, who collectively comprised more than thirty-three percent (33%) of the employees at the Pay Car Mine, experienced an involuntary, continuous, and ongoing employment loss for a period well in excess of six (6) months, which continues to cause them substantial economic and other harm.

## Class Allegations

32.     Plaintiff repeats and re-alleges paragraphs 1 through 26 as though fully set forth herein.

33.     Pursuant to Rule 23(a)-(b), Plaintiff brings this class action on behalf of the other similarly situated employees (hereinafter "Class Members") who were laid off or terminated, as set forth above, at the Pay Car Mine.

34.     The proposed class would be defined as: All full-time employees who were terminated from full-time employment at the Pay Car Mine by Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Coal Corporation, Keystone Service Industries, Inc., or Mechel Bluestone, Inc. on or about October 20, 2012.

35.     The Class Members are so numerous that joinder of all Class Members is impracticable because it is estimated that Defendants laid off or terminated at least approximately 80-90 of their employees in violation of the WARN Act.

36.     There are questions of law or fact common to the Class Members that predominate over any questions affecting only individual Class Members.  The principal question in this case is whether the Defendants' failure to provide notice of the 2012 Pay Car layoff constituted a violation of the WARN Act.

37.     The claims and defenses of the Plaintiff are typical of the claims or defenses of the Class Members as a whole because the Class Members are similarly affected by Defendants' wrongful conduct in violation of the WARN Act and possess the same remedies at law.

38.     The Plaintiff will fairly and adequately protect the interest of the Class Members because Plaintiff has demonstrated his commitment to this claim by preserving his work records, and because Plaintiff is represented by counsel who are competent and experienced, including experienced in bringing class action litigation under the federal WARN Act involving these Bluestone Defendants.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because (a) joinder of all Class Members is impracticable, (b) the Class Members are likely unemployed and not in a position to retain counsel, and (c) each individual Class Member has suffered damages that are merely modest.  Therefore, there will be no difficulty in the management of this class action and concentration of the claims in this forum will promote judicial economy.

### Damages and Relief Requested

40.     Pursuant to Rule 23(a), (b), & (c), and 29 U.S.C. § 2104(a)(5), and other applicable law, Plaintiff requests that the Court certify that Plaintiff and all other similarly-situated workers from Defendants' 2012 layoff, as set forth above, constitute a single class.

41. Plaintiff requests that the Court designate them as class representatives as permitted by 29 U.S.C. § 2104(a)(5).

42. Plaintiff requests that the Court appoint the undersigned attorneys as class counsel.

43. As a result of Defendants' WARN Act violations, Plaintiff requests that the Court order Defendants to pay Plaintiff and all other Class Members up to the maximum amount of statutory damages, including interest compounded at an appropriate rate and frequency, pursuant to 29 U.S.C. Sections 2104(a)(1) & (2).

44. Plaintiff requests that the Court order Defendants to pay Plaintiff's reasonable attorneys' fees, litigation expenses, and other costs that Plaintiff incurs in pursuing this action as authorized by 29 U.S.C. § 2104(a)(6).

45. Plaintiff requests that the Court grant them and all other Class Members any such other relief as it may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.**

**Plaintiff,
Dougie Lester,
By counsel:**

\s\ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
(304) 344-3144
Fax: (304) 344-3145
Email: sam@msjlaw.org
bren@msjlaw.org