IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DOUGIE LESTER,

          Plaintiff,

v.                                       CIVIL ACTION NO. 5:17-cv-00740

PAY CAR MINING, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Motion to Certify Class* (Document 40), the *Memorandum in Support of Motion to Certify Class* (document 41), the *Defendants' Brief in Opposition to Plaintiff's Motion to Certify Class* (Document 43), the Plaintiff's *Reply* (Document 46), and all attached exhibits. For the reasons stated herein, the Court finds that the Plaintiff's motion should be granted.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

For the purpose of this motion, the Court adopts the following facts from the Plaintiff's pleadings and the parties' briefing on class certification. The Plaintiff, Dougie Lester, initiated this action by filing his *Complaint* (Document 1) in this Court on January 20, 2017, alleging that the Defendants violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §2101 *et seq.*, by failing to provide a sixty-day notice to employees of a pending layoff. (Compl., at 1.) The Defendant, Pay Car Mining, Inc. (Pay Car), jointly with Bluestone Industries, Inc. (Bluestone Industries), Bluestone Coal Corporation (Bluestone Coal), Keystone Service

Industries, Inc. (Keystone), and Mechel Bluestone, Inc. (Mechel Bluestone), owned and operated several coal mining and producing facilities in Wyoming and McDowell Counties, West Virginia, including the Pay Car Mine. (Compl., at ¶ 1, 9-10.) The Pay Car Mine, the Keystone No. 2 preparation plant, and the Keystone Loadout, along with other mine portals, connected mining pits, and a refuse impoundment, made up the Burke Mountain Mine Complex. (Pl.'s Mem. of Law in Supp., at 4.) Pay Car Mining employed 100 or more employees at or in connection with the Pay Car Mine and the Burke Mountain Mine Complex. (Compl. at ¶ 9.) As of October 2012, Mr. Lester was a full time employee of Mechel Bluestone and Pay Car Mining at the Pay Car Mine, and had been for over two years. (*Id.* at ¶ 1.)

On or about October 20, 2012, the Defendants ordered a mass layoff at the Pay Car Mine. (*Id.* at ¶ 20.) The Defendants verbally informed all of the employees at the Pay Car Mine that there was no further work and that they were laid off. Between September 1, 2012, and December 1, 2012, approximately 80 miners, including the named Plaintiff, were laid off from the Pay Car Mine and the Burke Mountain Mine Complex. (Pl.'s Mem. in Supp., at 4.) Neither the Plaintiff nor his collective bargaining representative, the United Mine Workers of America, received written notice of the layoff. (Compl. at ¶ 30.) The Plaintiff claims that Mechel Bluestone, in coordination with Bluestone Industries and Bluestone Coal Corp., possessed de facto and dejure control over the Pay Car Mine such that Mechel Bluestone ultimately made the decision as to when to idle the mine's operations and lay off workers. (Pls.' Mem. of Law in Supp. at 4-5, 8-9.)

According to the Plaintiff, Mechel Bluestone, Bluestone Industries, and Bluestone Coal Corp. exercised direct supervisory authority over the Pay Car Mine and the Burke Mountain Mine Complex, including "direct[ing] the actions of the supervisory employees who managed coal

2

production, coal sales, maintenance, and the mine planning process . . . ." (*Id.* at 9.) The Plaintiff further alleges that Bluestone Industries and its affiliates "closely managed" Pay Car Mining and the Burke Mountain Mine Complex "in the form of operational planning, management, capital, budgeting, and Human Resources services." (*Id.*) According to the testimony of Mr. Tommy Lusk, superintendent of coal production for Bluestone Coal Corp., Mechel Bluestone and Bluestone Industries "coordinated virtually all coal production orders for the Burke Mountain Mine Complex and all other Bluestone locations." (*Id.*) (Pl.'s Ex. 12, Depo. Of Tommy D. Lusk, at 36:18-20.) The Plaintiff specifically asserts that it was Bluestone's manager of mines, William Potter, who ordered that the Pay Car Mine be idled and that miners be told there was no work until further notice. Myra Boland, Human Resources representative for Bluestone Coal Corp, previously communicated with employees at the Burke Mountain Mine Complex using Bluestone Coal Corp. letterhead. (Pl.'s Mem. of Law in Supp., Ex. 10 and 11.)

On April 24, 2018, the parties attended a mediation conference before United States Magistrate Judge Omar J. Aboulhosn. The parties did not reach a settlement agreement, and on the same day, the Plaintiff filed this motion to certify the class. The Defendants filed their response in opposition on May 8, 2018, and the Plaintiff filed his reply on May 15, 2018. The motion is fully briefed and ripe for review.

## APPLICABLE LAW

### A. *Federal Rule of Civil Procedure 23*

Rule 23 of the Federal Rules of Civil Procedure governs class action certification. Pursuant to that rule,

> [o]ne or more members of a class may sue . . . as representative parties on behalf of all members only if (1) the class is so *numerous* that joinder of all members is impracticable; (2) there are questions of law or fact *common* to the class; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class; and (4) the representative parties will fairly and *adequately* protect the interests of the class.

Fed. R. Civ. P 23(a) (emphasis added). In other words, Rule 23(a) requires a potential class plaintiff to show numerosity, commonality in questions of law or fact, typicality, and adequacy of representation. Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and limits the class to those with claims "fairly encompassed by the named plaintiff[]." *Dukes v. Walmart Stores*, 131 S.Ct. 2541, 2550 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). Rule 23(a) is not a "mere pleading standard." Rather, the rule requires that "[a] party seeking class certification must affirmatively demonstrate his compliance," by being "prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551.

However, plaintiffs seeking class certification must also satisfy one of the subsections of Rule 23(b) . *Brown v. Nucor Corp*., 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 318 (4th Cir. 2006). Here, the Plaintiff seeks class certification under Rule 23(b)(3), which requires the Court to determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Courts are to consider the following four factors in determining whether a class is appropriate pursuant to Rule 23(b):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

> undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties of managing a class action.

*Id.* A district court has broad discretion to decide whether to certify a class action under Rule 23, but the Plaintiff bears the burden of proof in establishing all requirements of Rule 23. *Leinhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)); *Int'l Woodworkers of Am. V. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981). At the class certification phase, the district court must "take a close look" at the "facts relevant to the certification question, and, if necessary, make specific findings" relevant to certification. *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citing *Gariety v. Grant Thornton*, LLP, 368 F.3d 356, 365 (4th Cir. 2004)). These findings are necessary, even if "the issues tend to overlap into the merits of the underlying case." *Id.*, citing *Falcon*, 457 U.S. at 160 ("[S]ometimes it may be necessary for the [district] court to probe beyond the pleadings before coming to rest on the certification question."); *Gariety*, 368 F.3d at 366.

### B. The WARN Act, 29 U.S.C. §2102 et seq.

Here, the alleged common questions of law or fact raised by the Plaintiff arises under the WARN Act, 29 U.S.C. §2102 *et seq*. The WARN Act requires employers to provide sixty (60) days written notice of a mass layoff to affected employees or their collective bargaining representative. 29 U.S.C. §2102(a), (a)(1). Under 29 U.S.C. §2101(a)(3), a "mass layoff" is a reduction in force which "(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for"… "(I) at least 33 percent of the employees …" and "(II) at least 50 employees …" 29 U.S.C. §2101(a)(3). Part-time employees are not considered in determining whether a mass layoff has occurred. *Id.*

5

The WARN Act defines an employer as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …" 29 U.S.C. §2101(A)(1)(a)-(b). Department of Labor regulations stipulate that "[u]nder existing legal rules, independent contractors and subsidiaries which are wholly or partially owned" by a corporate parent "are treated as separate employers or as a part of the parent or contracting company" based on "the degree of the independence from the parent." 20 C.F.R. §639.3(a)(2). "Some of the factors" for courts to use in determining whether a subsidiary and a parent constitute a common employer are "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id.*

Whether the Burke Mountain Mine Complex, which includes the Pay Car Mine, is a single site of employment is a mixed question of law and fact. *Davis v. Signal Int'l Texas GP*, 728 F.2d 482, 485 (5th Cir. 2013). Pursuant to Department of Labor regulations, a "single site of employment" can refer to a "single location" or a group of contiguous locations." 20 C.F.R. § 639.3(i)(1). The general rule is that "separate facilities are separate sites." *Davis*, 728 F.2d at 485, citing 54 Fed.Reg. 16042, 16050 (Apr. 21, 1989). Of particular relevance to this case, the regulations indicate that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" may constitute a single site of employment, "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." 20 C.F.R. § 639.3(i)(3). By contrast, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R.

6

§ 639.3(i)(4). Similarly, "[c]ontiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate sites of employment." 20 C.F.R. § 639.3(i)(5). The Department of Labor regulations also note that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the [preceding paragraphs] do not reasonably apply." 20 C.F.R. § 639.3(i)(8).

## DISCUSSION

A threshold issue in motions for class certification is whether the plaintiff satisfies the standing requirement. Article III of the Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, §2; *see also Rhodes v. E.I. Du Pont de Nemours and Co.*, 636 F.3d 88, 99 (4th Cir. 2011). A case must be brought by a party with a "personal stake" in the litigation." *Id.*, citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir.2008). In a class action, the plaintiff must not only have a "personal stake" in the litigation, but also must have "a distinct procedural right" to represent "the interests of similarly situated individuals." *Id.*, citing *Geraghty*, 445 U.S. at 402. In this case, the parties do not contest the question of whether the Plaintiff has Constitutional standing to bring the present case. Thus, the Court finds that the Plaintiff's cause of action satisfies, at a minimum, the requirements of Article III.

### A. *WARN Act Standing*

In order to determine whether the Plaintiff has a valid statutory cause of action under the WARN Act, and before applying Rule 23(a) and (b) to the Plaintiff's proposed class, the Court

7

must next determine whether the Plaintiff can bring a WARN Act class claim on behalf of all of the miners laid off at the Burke Mountain Mine Complex. This includes determining whether the Defendants constitute a single employer under the Act, and whether the Burke Mountain Mining Complex, and therefore the Pay Car Mine, constitutes a single site of employment.

### 1. *Single Employer*

The Department of Labor regulations set forth five factors for determining whether a parent corporation and its subsidiaries constitute an "employer" under the WARN Act: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. §639.3(a)(2). The Defendants have not contested that they constitute a single employer in their response in opposition. However, the Court finds that the Plaintiff has provided sufficient evidence to satisfy these five factors. The Defendants maintained ownership of the Burke Mountain Mine Complex, including the Pay Car Mine, and as previously stated, Mr. Lusk testified during his deposition that Bluestone Industries and Mechel Bluestone exercised control over Burke Mountain by managing coal production, coal sales, and mine planning. Further, Bluestone Industries and Mechel Bluestone have held themselves out as a single employer over the Burke Mountain complex by including Bluestone names and logos on communications with employees. Thus, because the Defendants have not contested that Bluestone was a single employer, and because the Plaintiff has satisfactorily proven that the Defendants exercised *de facto* and *de jure* control over the Burke Mountain Mine Complex, the Court finds that the Defendants were a single employer for the purposes of class certification.

### *2. Single Site of Employment*

Second, the Court must determine whether the area encapsulating the Pay Car Mine constitutes a single site of employment under the WARN Act. Whether or not a job site constitutes a single site of employment is determined by whether (1) the work areas are in a reasonable geographic proximity, (2) they share the same operational purpose, and (3) they share the same staff and equipment. 20 C.F.R. §639.3(i)(3). Here, the Plaintiff attempts to define and limit his class to "[a]ll full-time employees of Bluestone Industries, Inc. ("Bluestone") who were terminated from employment, or subject to a reduction in force, at the Burke Mountain Mine Complex, including the Pay Car Mine, from September 2, 2012, through December 1, 2012." (Pls.' Mem. of Law in Supp. at 2.) The Defendants again do not contest that the Burke Mountain Mine Complex was a single site of employment, and the Burke Mountain site satisfies all of the previously listed elements. To the extent that there were different work areas encompassing the Burke Mountain Mine Complex, all of those areas were within a reasonable geographic proximity to one another in that complex atop Burk Mountain. Further, the Pay Car Mine and the other work sites within the Burke Mountain Mine Complex were connected by haulage routes, were issued mining permits in the name of the Defendants, and pursued a common operational purpose, including sharing crews, equipment and facilities. (*Id.* at 11-12.) Thus, the Court finds that the Burke Mountain Mine Complex constitutes a single site of employment for purposes of the WARN Act.

### B. Rule 23(a)

Having found that the Plaintiff's class definition satisfies the WARN Act's standing requirements, the Court must determine if the proposed class satisfies the class action requirements of Rule 23(a) and (b)(3).

At the outset, the Defendants contend that the Plaintiff's class definition is fatally flawed for several reasons. The Defendants assert that the definition fails to account for miners who were not let go in violation of the WARN Act, who were not employed long enough for the WARN Act to apply, and because it spans a three-month period as opposed to a 30-day window as prescribed by the WARN Act. The Defendants further argue that the definition fails to be sufficiently precise, would require the Court to conduct "mini-trials" concerning each putative class member, and is an impermissible "fail-safe class in which 'the proposed class definition is in essence framed as a legal conclusion.'" (Defs.' Brief in Opp. at 3-5.) The Plaintiff counters that the class is not defined too broadly because the Court can review payroll records to determine whether a class member was covered by the WARN Act, and further contends that the definition is not fail-safe.

The Court finds that the Defendants' arguments are without merit. The Plaintiff's class definition is not overly broad and only includes those putative class members who were laid off from the Burke Mountain Mine Complex within an aggregated ninety-day period pursuant to 29 U.S.C. § 2102(d) and does not use legal terms of art that amount to a fail-safe class definition. The Court finds that the class definition is not flawed.

*1. Numerosity*

Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, the proposed class must be sufficiently numerous that "joinder of all members is impractical." In considering numerosity, the Court is not limited to consideration of sheer numbers and may consider the "negative impact on judicial economy if individual suits were required." *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 160 (S.D.W.V. Dec 19, 1996) (quoting *United Brotherhood of Carpenters and Joiners of America, Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D.W.Va. Jan. 14, 1994)). Here, the Plaintiff argues that his proposed class of miners is sufficiently numerous to make joinder impractical because the Defendants collectively laid off approximately 86[1] miners. The Plaintiff further asserts that because the WARN act only permits minimal damages, "akin to a liquidated damages payment," denying class certification would impede judicial economy by forcing workers to bring identical claims in separate suits. (Pl.'s Mem. of Law in Supp., at 14-15.) The Defendants counter that the Plaintiff has not precisely and sufficiently shown whether the putative class members were fired under the terms and conditions that the WARN Act requires, and without this information the Court is unable to correctly determine the numerosity requirement. As the Court previously held, the Plaintiff's definition is not so broad that the Court cannot discern

---

1 The Court notes that the Plaintiff's briefing on the issue provides inconsistent numbers regarding the amount of miners laid off from the Burke Mountain Mine Complex. In his complaint, the Plaintiff claims approximately "80 to 90 of Defendants' employees . . . experienced an involuntary, continuous, and ongoing employment loss." (Compl. at ¶ 31.) However, the Plaintiff's memorandum in support of his motion to certify the class states that "Defendants laid off approximately 105 employees in violation of the WARN Act." (Pl.'s Mem. of Law in Supp. at 14.) Finally, in his reply to the Defendants' response, the Plaintiff states that his evidence "establish[es] the single-site status of the workplace of the Defendants' roughly eighty-six employees who were laid off from full-time employment . . . ." (Pl.'s Reply at 3.) This final number takes into account the proposed class list submitted as an exhibit, which totals 79 miners, plus an additional seven miners found during a review of the Defendants' payroll records. Because the Plaintiff's reply is the most recent document submitted to the Court and takes into account the submitted exhibit and a later review of payroll records, the Court accepts 86 as the appropriate number of proposed class members. However, even if the number remained at 79 or 80, the Court's analysis and findings regarding the numerosity element under Rule 23(a) would remain unchanged.

whether certain putative class members should not be a part of the class. Joinder of 86 cases for all of the separate miners would clearly be impractical, and the Court therefore finds that the Plaintiff has satisfied the numerosity requirement of Rule 23(a).

*2. Commonality*

Next, the Plaintiff asserts that the proposed class members appropriately share common questions of law and fact under Rule 23(a)(2). The Supreme Court has held that, in order to show commonality, the Plaintiff must show that the proposed class members have suffered "the same injury," derived from a "common contention" of the source of the injury. *Walmart v. Dukes*, 131 S.Ct. at 2550-51; *General Telephone Co. of Southwest v. Falcon*, 457 U.S. at 157. The Court finds that the proposed class satisfies the commonality requirement of Rule 23(a). The Court notes that, as a general rule, the WARN Act is "particularly amenable to class-based litigation." *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F.Supp. 460, 465 (S.D.N.Y. December 4, 1989.) As the Plaintiff points out, even "minor factual variation among the putative class members" does not bar the Court from granting class certification. (Pls.' Mem. of Law in Supp., at 15.) *See, e.g., Christman v. American Cynamid Co.*, 92 F.R.D. 441, 452 n.28 (N.D.W.Va. 1981) (citations omitted) ("When the [class] claims arise out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment").

Here, the Plaintiff has shown that the proposed class members share common questions of law and fact. As alleged, all proposed class members were laid off from the same mine by the same employer within the same time frame, and all complain that the termination did not comply with the WARN Act. The Court therefore finds that the Plaintiff has satisfied the commonality requirement.

12

*3. Typicality*

The typicality requirement of Rule 23(a)(3) requires the Court to assess whether the proposed class representative (the Plaintiff) has claims and/or defenses which are "typical" of the members of the putative class. To satisfy this requirement, the Plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by the plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006). However, typicality does not require the Plaintiff's claim and those of the putative class members to be "perfectly identical or perfectly aligned;" rather, only "variation in claims [that] strikes at the heart of the respective cause[] of action" will result in denial of class certification." *Id*. at 467. The test for typicality involves a "comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id*.

To establish a *prima facie* case under the WARN Act, the Plaintiff must establish (1) that a mass layoff occurred and (2) that Bluestone failed to provide sixty days written notice of the layoff either to the Plaintiff, or to the Plaintiff's collective bargaining representative. 29 U.S.C. §2102(a); *see also Jim Walter Resources*, 6 F.3d at 722. The Plaintiff contends that because all of the class members worked for Bluestone and suffered a common employment loss, the Plaintiff's claims satisfy the typicality requirement. (Pls.' Mem. of Law in Supp., at 17.) The Defendants counter that typicality is not satisfied due to "the atypical nature of this WARN Act case with multiple employer defendants, multiple sites of employment, and different employee statuses (e.g. union vs. non-union)." (Defs.' Brief in Opp. at 9.) However, the Court has previously held that the Plaintiff and putative class members were employed by a single employer on a single site of employment and have standing under the WARN Act. The heart of this case is

whether Bluestone unlawfully discharged the Plaintiff and other putative class members in violation of the WARN Act, and the Court finds that the Plaintiff satisfies the typicality requirement of Rule 23(a).

*4. Adequacy of Representation*

"When assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Black v. Rhone-Poulenc, Inc*., 173 F.R.D. 156, 162 (S.D.W.Va. December 19, 1996) (quoting *United Brotherhood of Carpenters and Joiners of America, Local 899 v. Phoenix Assoc., Inc.*, 152 F.RD. 518, 523 (S.D.W.Va. January 14, 2014)). The Plaintiff can meet that standard by showing "interests common with, and not antagonistic to, the [c]lass interests . . . ." *In re Southeast Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 606-07 (W.D.N.C. 1993) (citing *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975)); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 302 (D.Md.1977). The Court must also consider whether the class counsel is adequate. The test for adequacy of class counsel is "(1) absence of conflict and (2) assurance of vigorous prosecution." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS ACTIONS §3.22 (3RD Ed. 1992)). Courts generally evaluate the "competence and experience" of class counsel, and will presume such attributes "in the absence of proof to the contrary." *Id.*

The Court finds that the Plaintiff will adequately represent the proposed class members, as they share a common claim, and have a significant financial stake in this litigation. *See In re Southeast Props. Ltd. P'ship Investor Litig*., 151 F.R.D. at 607. Further, the Plaintiff's claim, like that of the proposed class members, will "stand or fall on the issue" of whether the Defendants'

14

layoff procedures violated the WARN Act. *See Id*. The Court also finds that Plaintiff's counsel is adequate and satisfies the test described above. There is no evidence of a conflict of interest, and the Plaintiff has proffered that his counsel has "served as class counsel in more than a dozen cases both in the United States District Court for the Southern District of West Virginia and West Virginia state courts." (Pls.' Mem. of Law in Supp., at 19.) The Defendants repeat the same objections previously argued regarding the other elements of class certification in which the Court has previously found no merit. Therefore, the Court finds that Plaintiff has satisfied the adequacy of representation requirement of Rule 23(a)(4).

   *C. Rule 23(b)*

 Finally, the Plaintiff must show that the proposed class satisfies the requirements of Rule 23(b) of the Federal Rules of Civil Procedure, specifically Rule 23(b)(3) in this case. Pursuant to Rule 23(b)(3), a Court can certify a class action where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3). The Court should consider "the class members' interests in individually controlling the prosecution or defense of separate actions," along with the "extent and nature of any litigation" about this case already commenced by class members, the "desirability or undesirability of concentrating the litigation" in this forum, and "the likely difficulties in managing a class action" when determining this issue. *Id.* The predominance requirement of Rule 23(b)(3) is more stringent than the "commonality" requirement of Rule 23(a), and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d at 319, quoting *Gariety v. Grant Thornton*, LLP, 368 F.3d at 362.

15

"In determining whether the predominance standard is met, courts focus on the issue of liability." *Nolan v. Reliant Equity Inv'rs, LLC*, No. CIV A 3:08-CV-62, 2009 WL 2461008, at *5 (N.D.W. Va. Aug. 10, 2009) (internal citations omitted).

The Court finds that the Plaintiff's proposed class is sufficiently cohesive to satisfy the predominance requirement. As the Plaintiff has shown, the central question regarding the Plaintiff and putative class members is simply the Defendants' liability pursuant to the WARN Act, and that question is common to all class members. Any individual questions of fact, which may emerge for particular plaintiffs after certification, are clearly subordinate to this central question. Further, the Plaintiff's proposed class also satisfies the superiority requirement of Rule 23(b)(3). The absence of any pending litigation as to the relevant layoff suggests to the Court that a class action is the most appropriate means to adjudicate the controversy, and suggests a low risk that class members may benefit from adjudicating their claims individually. The Court notes that the relatively modest damages available to the Plaintiff under the WARN Act weighs against any vested interest in individual actions. *See Nolan*, 2009 WL 2461008, at *6. The absence of any conflicts of interest on the part of class counsel, and the fact that other courts have found class actions to be the preferable method for resolving claims arising under the WARN Act, also warrant such a finding. The Court has no concerns about the manageability of the proposed class beyond the "typical issues of language of the notice and provision of notice to class members." *See id*. The Court also finds that it is desirable to concentrate this litigation in the Southern District of West Virginia, where the relevant mine is located and the layoff at issue occurred. The Court has accepted the Plaintiff's proffer that there is no other pending litigation regarding the proposed class. The Court finds that the Plaintiff has satisfied Rule 23(b)(3).

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Motion to Certify Class* (Document 40) be **GRANTED**.

1. This action is hereby certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class certified (the "Class") is defined as follows, subject to any later modification pursuant to Rule 23(c)(1)(C): All full-time employees of Bluestone Industries, Inc. ("Bluestone") who were terminated from employment, or subject to a reduction in force, at the Burke Mountain Mine Complex, including at the Pay Car Mine, from September 2, 2012 through December 1, 2012.

2. The Class claims are those alleged in the Plaintiff's *Complaint*, specifically that the Defendants violated the WARN Act, 29 U.S.C. § 2102 *et seq*.

3. Plaintiff Dougie Lester is hereby appointed as Class Representative.

4. The following are appointed jointly as Class counsel: Bren L. Pomponio and Samuel B. Petsonk of Mountain State Justice, Inc.

5. The Court will permit discovery as to possible modification of the class definition as well as to the merits of the case, and will entertain future motions for modification of the class definition.

6. The Plaintiff will submit to the Court a proposed Class notice document after conferring with opposing counsel.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 6, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA