IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**DOUGIE LESTER, individually and on
behalf of all others similarly situated,**

        **Plaintiff,**

v.                                              **CIVIL ACTION NO.  5:17-cv-00740**
                                                    **Honorable Judge Irene C. Berger**

**PAY CAR MINING, INC.,
BLUESTONE INDUSTRIES, INC.,
BLUESTONE COAL CORP.,
KEYSTONE SERVICE INDUSTRIES, INC.
and MECHEL BLUESTONE, INC.,**

        **Defendants.**

**REPLY TO DEFENDANTS' OBJECTIONS
TO PROPOSED JUDGMENT ORDER**

        The Plaintiff file this Reply in Opposition to the Defendants' Objections to the Proposed Judgment Order.

        **I.**        **RELEVANT PROCEDURAL BACKGROUND**

        1.        On July 12, 2018, the Parties entered a Mediated Settlement Agreement setting forth a 25-month period during which the Defendants would provide a series of payments to the class representative, class administrator, and to the class members via a common fund.  (*See* ECF Doc. # 61-1) (Mediated Settlement Agreement). On March 7, 2019, this Court entered an Order approving the final settlement in this case. (*See* ECF Doc. # 63) ("Order Approving Settlement"). The Defendants have accepted judgment pursuant to the terms of the Mediated Settlement Agreement, which were incorporated in this Court's Order Approving Settlement. Pursuant to that Order, the Defendants were subject to the following obligations:

    a. The Defendants agreed to pay $1,000,000.00 in three equal installments no later than: August 31, 2019, February 28, 2020, and April 30, 2020, and any applicable late penalties for days that the payments may be late.
    b. The Class Counsel is to receive attorney's fees of fifteen percent (15%) of the $1,000,000.00 payment, equating to $150,000.00.
    c. The Parties agreed that there are eighty-nine class members, providing $9,550.56 per class member.
    d. The Defendants agreed to pay to the class representative the sum of $10,000 due by September 10, 2018, and any applicable late penalties for days that the payment was late.
    e. The Defendants agreed to pay a class administration fee to Mountain State Justice of $30,000.00 due by September 10, 2018, in order to cover the costs of the administration of the claims, verification of class members, and management of class notice, and any applicable late penalties for days that the payment was late.
    f. The Defendants agreed to pay a penalty of One Thousand Dollars ($1,000.00) per day for each day that they are late in making payment to the class counsel, the class representatives, or to the class itself, with the right of a fifteen (15) day grace period. Should a payment be late and not cured within 15 days of the due date, then the penalty of One Thousand Dollars ($1,000.00) for each such late payment will be retroactive to the original due date of the payment.

The Defendants failed to make payments by the timeline set in the Mediated Settlement Agreement. First, the Defendants failed to make the payment of $30,000.00 due on September 10, 2018 to the class administrator. Second, the Defendants failed to make the payment of $10,000.00 that was due on September 10, 2018 to the class representative. On January 16, 2019, this Court held a hearing in this matter. By that date, 128 days had elapsed since the first two payments were due to the class administrator and class representatives. Defendants had made no payments at that time.

In order to ensure that the Defendants came current on the obligations to the class, the Parties entered a supplemental agreement that provided for payment of the amounts due to the class and for partial forgiveness for the daily late fees---by allowing the Defendant to pay $1,000.00 per day running since September 10, 2018, instead of paying separate late fees for

each of the two late payments. The compromised total to make up the arrearage was $168,000.00, to be paid on the following schedule:

    a. $33,600.00 on January 18, 2019 (class administrator and representative);
    b. $33,600.00 on February 1, 2019 (class administrator and representative);
    c. $33,600.00 on February 15, 2019 (class administrator and representative);
    d. $33,600.00 on March 1, 2019 (class administrator and representative);
    e. $33,600.00 on March 15, 2019 (class administrator and representative);

The Defendants also remained obligated to make additional payments to the common fund in the amounts of $333,333.33 on or before August 31, 2019, $333,333.33 on or before February 28, 2020, and $333,333.34 on or before April 30, 2020, pursuant to the Order Approving Settlement.

The Defendants made the two initial payments of $33,600.00 in accordance with the above schedule.

The Defendants owe the following unpaid amounts that are now due:

    g. $33,600.00 due February 15 (class administrator and representative);
    h. $33,600.00 due March 1 (class administrator and representative);
    i. $33,600.00 due March 15 (class administrator and representative);
    j. $106,000 – late fees for the two payments due on February 15 and not yet paid. ($2,000/day x 53 as of 4/9/19)
    k. $78,000 – late fees for the two payments due on March 1 and not yet paid. ($2,000/day x 39 as of 4/9/19)
    l. $50,000 – late fees for the two payments due on March 15 and not yet paid. ($2,000/day x 25 as of 4/9/19)

The total unpaid amounts that are now due equals $334,800.00 as of April 9, 2019.

The Parties further agreed, and the Court ordered on March 7, that the same $1,000 daily late fees would apply as had been originally negotiated in the Mediated Settlement Agreement, in order to incentivize timely performance with the new timeframes that the Parties had entered before this Court on January 16, 2018 and had pledged to honor.

Relying on the new timetable, Mountain State Justice, Inc., acting in its capacity as class counsel and class administrator, sent out a Court-approved notice informing the class members.

At the present time, the Defendants are still accruing $2,000.00 in daily late fees until all arrearages are paid off, including unpaid late fees that are "payments due" immediately under the Mediated Settlement Agreement. Furthermore, Defendants will still owe the additional $1,000.000.00 to the common fund as set forth in the Order Approving Settlement.

## II. ANALYSIS

The Defendants essentially make two arguments that merit discussion. First, they argue that the agreement did not provide for "post-judgment penalties." Second, they argue that it would be "unduly burdensome" and a "windfall" for the Court to enforce the liquidated damages provision of the Mediated Settlement Agreement in the same fashion as the Defendants voluntarily agreed to comply with that provision previously, and as requested by the Plaintiff in the Motion to Enforce (ECF Doc. # 65), the Notice for Entry of Judgment (ECF Doc. # 66), and the Proposed Judgment Order (ECF Doc. # 69).

### A. *The Agreement and Order provide for liquidated damages in the form of late fees for payments that are late---regardless of whether those late payments accrue before or after the entry of judgment*

As to the argument that the Mediated Settlement Agreement ("Agreement"), and/or the Order Approving Settlement ("Order"), did not provide for "post-judgment penalties," this argument is a red herring. The Agreement and Order provided for liquidated damages in the form of late fees in the amount of $1,000.00 per day "for each day that a payment due hereunder is late" --- without regard to whether the Court had entered judgment yet or not. Indeed, the Defendants agreed to the entry of judgment against them at the time of the signing of the agreement and so it is illogical to assert that, had the Court entered judgment immediately, that

4

would somehow have cut off the Defendants' obligations regarding late payments under the Agreement.

### B. Defendants' regrets about their contract, and their concerns that it is "unduly burdensome" or a "windfall," are immaterial to the enforceability of the Agreement and Order---and furthermore, Defendants have waived any legal contractual defense to the enforcement of the Agreement by failing to raise it in their brief.

As to the argument that the terms of the Agreement and the Order are "unduly burdensome" or a "windfall," the Defendants have failed to articulate any legal argument that their own agreement should be set aside or that the liquidated damages provision to which they agreed is unenforceable. The Defendants did not make the legal argument that the late fees constituted a liquidated damages provision that was "grossly disproportionate" to the actual damages or that it violated any of the other tenets of West Virginia contract law. Instead, Defendants have merely complained that the amounts that they owe are "excessive" in the abstract. However, to the extent that the Court may consider the legal factors for evaluating a liquidated damages provision before entering the Judgment Order, the case law set forth herein clearly indicates that the Settlement Agreement is legally sound under applicable principles of West Virginia contract law and the germane Fourth Circuit precedent.

In *Choice Hotels Int'l, Inc. v. Chewl's Hosp., Inc*., 91 F. App'x 810 (4th Cir. 2003), an arbitrator issued an award in favor of Choice Hotels for $196,992 in liquidated damages; $32,042.60 in damages for trademark infringement; $10,245 in attorneys' fees; and $1,379.52 in costs. *See Choice Hotels* 91 F. App'x at 813. The amount of the liquidated damages was *over six times the sum of actual damages* incurred for the trademark infringement in that case. *Id*. The opposing party, Chewl's Hospitality, moved to set aside the award based, in pertinent part, on the arguments that the contractual liquidated damages clause in the underlying contract was unenforceable because it was "grossly excessive and out of all proportion to the damages that

5

might reasonably have been expected to result from [a] breach of the contract," and argued that Choice Hotels should not be permitted to recover both liquidated damages and damages for trademark infringement. *Id*. at 812, 817. Applying Maryland common law contract principles, the Fourth Circuit found that the liquidated damages provision was fully enforceable and not "grossly disproportionate" to the actual damages. The Court reached that holding because "[p]recise damages could not be determined at the time of contracting, there being no measure [for the prospective breach or default under the agreement]." *Id*. at 817. The Court went on: "Moreover, the liquidated damages clause provided a reasonable method for calculating just compensation, taking into account the profits earned in the months prior to termination and the amount of time remaining [for the relevant contractual performance]." *Id*.

In this case, all the relevant transactions occurred in West Virginia. There was no choice of law provision in the Agreement. Thus, West Virginia contract law applies.

Under West Virginia law, "[p]arties may properly contract for liquidated damages (1) where such damages are uncertain and not readily capable of ascertainment in amount by any known or safe rule, whether such uncertainty lies in the nature of the subject, or in the particular circumstances of the case; or (2) where from the nature of the case and tenor of the agreement, it is apparent that the damages have already been the subject of actual fair estimate and adjustment between the parties." *Wheeling Clinic v. Van Pelt*, 192 W. Va. 620, 625, 453 S.E.2d 603, 608 (1994) (*citing Stonebraker v. Zinn*, 169 W. Va. 259, 286 S.E.2d 911 (1982)). A liquidated damages provision may not be enforced if the measure of liquidated damages is "grossly disproportionate" to actual damages. *Gateway Towne Ctr., LLC v. First United Bank & Trust*, 2011 WL 3877010, at *6 (N.D. W.Va. Sept. 2, 2011) (*citing West Virginia Pub. Employees Ins. Bd. v. Blue Cross Hospital Serv. Inc*., 328 S.E.2d 356, 359 (1985)). Here, Plaintiff have shown

that the liquidated damages provision was "the subject of actual fair estimate and adjustment between the parties" because it was negotiated through an arm's length mediated settlement transaction. The Parties were fully apprised of the nature of the liquidated damages term when they entered it. Accordingly, the Parties "properly contracted for a liquidated damages provision" under the *Wheeling Clinic*. Further, the standard for abrogating liquidated damages---gross disproportionality---is similar under both Maryland and West Virginia law. And so the *Choice Hotels* analysis is instructive---if not controlling---on how the Fourth Circuit would likely review West Virginia law on liquidated damages as applied in this case.

The liquidated damages are not "grossly disproportionate" to actual damages. Unlike in *Choice Hotels*, the outstanding late fees are not currently even equal to the amount of the underlying obligation of $842,000.00, or the initial agree-upon modified obligation of $1,050,000.00. That is, not only are the liquidated damages not in excess of six times the principal amount (as was upheld in *Choice Hotels*), they are actually less than the principal amount.

In this case, the 89 class members---including the class representative---received notice of the settlement terms and forewent any objections to that settlement, based at least in part on the notice that they would be paid on a specific schedule set forth in the class notices---a schedule that has now been breached by Defendants. The losses incurred by the 89 class members---as well as by the class representative and class counsel---in reliance on the promised payment dates were hard for the Parties to ascertain at the time of contracting. Therefore, the Parties reasonably resorted to negotiating a liquidated damages provision. The Court has found that the Defendants constitute a single employer. (ECF Doc. # 25 7-8)). The Court has further found that the single employer's Burke Mountain Mine Complex constitutes a single site of

employment. (*Id*. at 8-9). Enforcement of the judgment against the single employer based on the revenues and assets associated with the entire Burke Mountain Mine Complex are thus appropriate and consistent with the record that has been established in this case.

The Defendants have made payments in the amount of $67,200.00 over a two-month period. Accordingly, the Defendants themselves and/or the single-employer corporate entity of which the Defendants are a part has access to cashflow from their active operations, and/or access to liquidity (via underutilized plant and equipment), sufficient to generate the funds necessary to pay the remainder of the judgment on the schedule by which it is due: $334,800.00 immediately and $1,000,000.00 as set forth in the Order Approving Settlement and the Mediated Settlement Agreement.

In West Virginia, there is not a strict bar against the enforcement of punitive contract terms, but a penalty clause will not be enforced unless justice clearly demands it. *W. Virginia Pub. Employees Ins. Bd. v. Blue Cross Hosp. Serv. Inc.*, 174 W. Va. 605, 608, 328 S.E.2d 356, 359 (1985) (*citing Hill v. Vencill*, 90 W.Va. 136, 144, 111 S.E. 478, 481 (1922)). Even if the Court were to view the liquidated damages provision as so grossly disproportionate to the actual damages as to be construed as punitive---again, this is a legal point that the Defendants did not argue in their objections to the Proposed Judgment---the Plaintiff nonetheless urges that justice clearly demands the imposition of the $1,000/day for each late payment for the following reasons: the personal inconvenience to the class representative, and the costs to the class administrator, of litigating, mediating, settling, and administering the settlement in this matter have been substantial; the miners themselves have gone for over six years since the mass layoff in 2012 without receiving the paid notice set forth under the WARN Act; further, when settling the case in 2018, the Plaintiff agreed to provide the Defendants with 25 months to fully perform

their obligations under the Mediated Settlement Agreement; the Plaintiff agreed to even further liberalize the period for performance and to reduce the liquidated damages owed under the Agreement on one prior occasion, and that agreement was entered by the Parties before this Court at the hearing on January 16, 2019 and memorialized in the Court's Order Approving Settlement on March 7, 2019. The Defendants have demonstrated an ability to pay the required amounts on an ongoing basis by making periodic payments equaling $67,200.00 thus far in 2019; and the Defendants have acknowledged by their conduct and testimony that they, and the single-employer entity with which they are associated, do continue to have active operations on Burke Mountain and access to sufficient liquidity to pay the outstanding balances.

### *It is proper for parties to a contract to recover both actual and liquidated damages*

As to the breaching party's claim that it is improper to award both actual and liquidated damages under their contract, the Fourth Circuit summed it up in *Choice Hotels*: "This argument is meritless [. . . where the] agreement called for liquidated damages to remedy [. . . the breaching party's] default." *Choice Hotels* at 10. The Mediated Settlement Agreement included the liquidated damages provision "for each day a payment due hereunder is late," and did not include any further provision for any accord and satisfaction that would absolve Defendants from further liquidated damages while any payments due under the agreement (including liquidated damages due) remained unpaid.

Moreover, because the sums of $2,000.00 per day have been insufficient to catalyze compliance with this obligation under the Court's Order Approving Settlement, the ongoing imposition of those sums---or alternately, a more stringent measure---appears necessary in order to incent the Defendants to timely adhere to the Order of this Court.

9

**WHEREFORE**, Plaintiff respectfully requests that this Court enter the judgment as proposed by Plaintiff and agreed to by Defendants, that the Court order the Defendants to comply with the settlement terms set forth above by making the outstanding payments as soon as possible, and that the Court assess such further sanctions or penalties as it may deem necessary and just.

**Plaintiff,**
**Dougie Lester,**
**By counsel,**

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
223 Prince Street
Beckley, WV 25801
(681) 207-7510 (phone)
(681) 207-7513 (fax)
sam@msjlaw.org
bren@msjlaw.org